UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SIERA A. B.-S.[1],                    )
                                      )
                 Plaintiff,           )
                                      )
          v.                          )        No. 1:21-cv-00247-DLP-JPH
                                      )
KILOLO KIJAKAZI,                      )
                                      )
                 Defendant.           )

## ORDER

Plaintiff Siera A. B.-S. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court

hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further proceedings.

## I.   PROCEDURAL HISTORY

On May 25, 2018, Siera filed an application for Title II DIB. (Dkt. 12-2 at 16,

R. 15). Siera's application alleged hemichorea; severe post-traumatic stress disorder;

manic bipolar disorder; anxiety; depression; diabetes; and a recovering addiction.

(Dkt. 12-6 at 9, R. 215). The Social Security Administration ("SSA") denied Siera's

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

claim initially on December 10, 2018, (Dkt. 12-3 at 2, R. 76), and on reconsideration on March 4, 2019. (Id. at 15, R. 89). On April 12, 2019, Siera filed a written request for a hearing, which was granted. (Dkt. 12-4 at 16, R. 117). On May 27, 2020, Administrative Law Judge ("ALJ") T. Whitaker conducted a hearing, where Siera, her counsel, and vocational expert, Harry Cynowa, appeared telephonically. (Dkt. 12-2 at 38, R. 37). On July 21, 2020, ALJ Whitaker issued an unfavorable decision finding that Siera was not disabled. (Dkt. 12-2 at 16-30, R. 15-29). Siera appealed the ALJ's decision and, on December 3, 2020, the Appeals Council denied Siera's request for review, making the ALJ's decision final. (Dkt. 12-2 at 2-5, R. 1-4). Siera now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process

for determining disability. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine

whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Siera is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

III.   BACKGROUND

A. Factual Background

Siera was thirty-one years old as of the alleged onset date of February 1, 2018. (Dkt. 12-2 at 19, 29, R. 18, 28). She earned a GED. (Dkt. 12-2 at 29, R. 28). She has past relevant work history as a fast food restaurant worker and a composite job that included elements of box maker and hand packer. (Id. at 28, R. 27.).

B. ALJ Decision

In determining whether Siera qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Siera was not disabled. (Dkt. 12-2 at 16-30, R. 15-29). At Step One, the ALJ found that Siera had not engaged in substantial gainful activity since her alleged onset date of February 1, 2018. (Id. at 19, R. 18).

At Step Two, the ALJ found that Siera has severe impairments of diabetes mellitus, type I with polyneuropathy, diabetic food infection, diabetic ulcer of right heel, and a history of hemi-chorea-hemibalismus syndrome most likely due to nonketotic hyperglycemia; chronic pain syndrome; obesity; major depressive disorder; depression; anxiety disorder; post-traumatic stress disorder; opioid agonis treatment; a history of heroin use disorder; and a history of cocaine use disorder. (Dkt. 12-2 at 19-20, R. 18-19). The ALJ also found the nonsevere impairments of a left breast lump with negative biopsy; an episode of acute bronchitis; a history of sore throat and sinusitis; osteoarthritis of the left foot; hallux valgus deformity; an injury of the left great toe and superficial laceration of the left foot; bronchitis; a history of soft tissue

injury; a vaginal yeast infection; and a history of brain abscess and sepsis with emboli. (Id. at 20, R. 19).

At Step Three, the ALJ found that Siera's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, and 404.1526, considering Listings 9.00, 11.02, 11.14, 12.04, 12.06, and 12.15. (Dkt. 12-2 at 20-24, R. 19-23). As to the "paragraph B" criteria, the ALJ concluded that Siera had no limitation in understanding, remembering or applying information and moderate limitations in interacting with others; adapting or managing oneself; and concentrating, persisting, or maintaining pace. (Id.).

After Step Three but before Step Four, the ALJ found that Siera had the residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a), with the following limitations: able to lift, push, pull, and carry ten pounds occasionally and five pounds frequently; able to sit, stand, and walk, each, for six hours of an eight-hour workday; not able to climb ladders, ropes, or scaffolds; able to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs occasionally; able to handle objects frequently; limited to simple, routine, and repetitive work; must have no production rate or pace work; limited to work with only occasional workplace changes; limited to work with no interaction with the public and only occasional interaction with coworkers and supervisors. (Dkt. 12-2 at 24, R. 23).

At Step Four, the ALJ concluded that Siera could not perform her past relevant work. (Dkt. 12-2 at 28-29, R. 27-28). The ALJ then concluded that, considering Siera's age, education, work experience, and residual functional capacity,

that Siera could perform jobs that exist in significant numbers in the national economy, such as packer, sorter, and office clerk. (Id. at 29-30, R. 28-29). The ALJ thus concluded that Siera was not disabled. (Id. at 30, R. 29).

## IV.   ANALYSIS

Siera challenges the ALJ's decision on three[2] grounds. First, the Plaintiff argues that the ALJ erred when considering the "paragraph B" criteria. (Dkt. 15 at 14-20)[3]. Second, Siera contends that the ALJ's mental RFC is not supported by substantial evidence. (Id. at 14-15, 20-25). Third, Siera argues that the ALJ conducted a faulty 16-3p analysis of her subjective symptoms. (Id. at 26-32).

### A. "Paragraph B" Analysis

First, Siera argues that the ALJ relied on a cherry-picked view of the evidence when evaluating her limitations in the four "paragraph B" criteria areas. (Dkt. 15 at 14-20). The Commissioner argues that the ALJ's analysis was supported by substantial evidence. (Dkt. 16 at 5-13).

When evaluating a claimant's mental impairments, ALJs must use a special technique that analyzes pertinent symptoms, signs, and laboratory findings to determine whether a medically determinable impairment exists. 20 C.F.R. § 404.1520a(b)(1). If a medically determinable impairment exists, the ALJ must then assess a claimant's functional limitations by utilizing a complex and highly individualized process that considers all relevant and available clinical signs and

---

[2] Plaintiff's brief contains two arguments, but the first argument is more accurately split into two.
[3] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the Docket. The Undersigned has chosen to cite to the paginated numbers from the Docket.

laboratory findings, the effects of symptoms, and how functioning may be affected by other factors such as chronic mental disorders, structured settings, medication, and other treatment. 20 C.F.R. § 404.1520a(c)(1). ALJs shall analyze functional limitations by looking to four broad categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2). These four areas will be rated on a five point scale: none, mild, moderate, extreme, marked. 20 C.F.R. § 404.1520a(c)(4).

In this case, as noted previously, the ALJ determined that Siera had several mental impairments, including major depressive disorder; depression; anxiety disorder; post-traumatic stress disorder; opioid agonis treatment; a history of heroin use disorder; and a history of cocaine use disorder. (Dkt. 12-2 at 20, R. 19). As to the "paragraph B" criteria, the ALJ recited some of the medical history and Siera's statements and determined that she had no limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentration, persistence, and maintaining pace; and adapting or managing oneself. (Dkt. 12-2 at 22-24, R. 21-23). Siera specifically challenges the ALJ's finding

that she had moderate limitations in interacting with others and concentration, persistence, and maintaining pace. (Dkt. 15 at 16-20). Plaintiff argues that the ALJ failed to sufficiently support her finding and, instead, relied on cherry-picked evidence. (Id.).

### a. Concentrating, Persisting, and Maintaining Pace

To support her finding that Siera had moderate limitations with regard to concentrating, persisting, or maintaining pace[4], the ALJ acknowledged Siera's subjective allegation that she had difficulty with concentration and task completion and that her ability to maintain attention depended on her level of anxiety. (Dkt. 12-2 at 23, R. 22). The ALJ also cited to the consultative psychologist's report that Siera's concentration was appropriate during the exam and sufficient for job tasks, and that her ability to persist in job settings was impacted by anxiety and depressive symptoms and that she would benefit from low-energy and low-stress job tasks. (Id.). Finally, the ALJ pointed to one visit with the attending psychiatric nurse practitioner where Siera was noted to have normal attention span and concentration. (Id.).

Plaintiff argues that the ALJ failed to acknowledge the bulk of her medical records, primarily the records from Meridian Health Services that span over a two-

---

[4] The ALJ acknowledged that this area "refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. (Dkt. 12-2 at 23, R. 22).

year time period. (Dkt. 15 at 16-17). As the Plaintiff notes in her brief, the records

demonstrate as follows:

> [Siera] frequently struggled to make and get to appointments on time.
> [Dkt. 12-7 at pp.128, 132, 136, 159, 164, 171, 280, R. 406, 410, 414, 437,
> 442, 449, 558; Dkt. 12-8 at pp.13, 37, 41, 53, 57, 61, 93, R. 579, 603, 607,
> 619, 623, 627, 659; Dkt. 12-9 at pp.44, 56, 240, 244, R. 778, 790, 974,
> 978]. She struggles to focus and stay on task through therapy sessions
> and to stay on task while completing tasks in the community. [Dkt. 12-
> 7 at pp.128, 132, 144, 151, 155, 171, 276, 280, R. 406, 410, 422, 429, 433,
> 449, 554, 558; Dkt. 12-8 at pp.13, 37, 41, 45, 49, 61, 65, 85, R. 579, 603,
> 607, 611, 615, 627, 631, 651; Dkt. 12-9 at p.244, R. 978]. She struggles
> to complete tasks, even with help from her therapist. [Dkt. 12-7 at
> pp.156, 171, R. 434, 449; Dkt. 12-8 at pp.37, 61, 70, 85, R. 603, 627, 636,
> 651; Dkt. 12-9 at p.244, R. 978]. She is easily distracted. [Dkt. 12-9 at
> p.169, R. 903]. She frequently required several reminders or redirection
> during her interactions with her therapist. [Dkt. 12-7 at pp.128, 133,
> 145, R. 406, 411, 423; Dkt. 12-8 at pp.38, 53, 61, R. 604, 619, 627]. She
> is regularly observed to be hyper vigilant. [Dkt. 12-7 at pp.128, 159, 163,
> 272, 276, R. 406, 437, 441, 550, 554; Dkt. 12-8 at pp.13, 21, 37, 41, 45,
> 49, 53, 57, 61, 65, 69, 77, R. 579, 587, 603, 607, 611, 615, 619, 623, 627,
> 631, 635, 643; Dkt. 12-9 at pp.169, 240, R. 903, 974]. She exhibits
> scattered, unorganized thoughts. [Dkt. 12-7 at pp.128, 163, 167, 175,
> 179, 272, 276, R. 406, 441, 445, 453, 457, 550, 554; Dkt. 12-8 at pp.29,
> 53, 57, 61, 65, R. 595, 619, 623, 627, 631].

(Dkt. 15 at 16-17). On the Court's review of this evidence, there appear to be

examples of Siera struggling with concentrating and persistence for even the most

basic of activities. For example, the claimant needed several reminders to attend a

primary care appointment in August 2018, but still needed to call to reschedule for a

later time because she could not stay focused. (Dkt. 12-7 at 128, R. 406). As a result of

that delay, Plaintiff became so agitated that she needed redirection from her

behavioral therapist several times. (Id. at 129, R. 407). At another visit in August

2018, Plaintiff needed redirection several times to simply get her daughter registered

for school. (Id. at 132, R. 410). While eating lunch with her therapist in November

2019, Plaintiff required numerous redirections to act appropriately and focus. (Dkt. 12-9 at 99, R. 833).

The Commissioner maintains that the ALJ was not required to rely on the behavioral health treatment notes from Meridian Health Services[5] because the vast majority of these reports came from non-acceptable medical sources who did not provide any mental health treatment and, thus, were not medical records. (Dkt. 16 at 10-11). The Commissioner also notes that these records were duplicative of other medical evidence in the record. (Id.). Although the Commissioner contends that the ALJ was not required to rely on these notes from non-acceptable medical sources,[6] the records from Meridian Health Services encompass visits with Plaintiff's treating nurse practitioner, a psychiatrist, and an occupational and behavioral health professional; therefore, it is not clear whether all of these records are medical or non-medical, or a combination of the two. (Dkt. 12-7 at 61-96, 126-80, 220-284, R. 339-374, 404-458, 506-562; Dkt. 12-8 at 3-101, R. 568-667; Dkt. 12-9 at 26-249, R. 760-983).

Though an ALJ need not mention every piece of evidence in the record, an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence pointing to a disability finding. , 953 F.3d 461, 466 (7th Cir. 2020) (*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Recognizing that the ALJ makes a reference to one page of these

---

[5] The Commissioner suggests that these records came from Richmond Treatment Center, but they in fact were from Meridian Health Services.

[6] Courts in this Circuit have found that ALJs must minimally articulate *how* nonmedical evidence is considered, both pursuant to 20 C.F.R. § 404.1520c and SSR 16-3p. *Andrew L. v. Kijakazi*, No. 20 CV 1609, 2021 WL 5447035, at *4 (N.D. Ill. Nov. 22, 2021); *see also Matthew T. v. Kijakazi*, No. 1:21-cv-02714-MJD-RLY, 2022 WL 2900835, at *4 (S.D. Ind. July 21, 2022) (ALJ erred by wholly ignoring extensive behavioral health evidence).

records to show that Siera had normal status during an examination, (Dkt. 12-2 at 27, R. 26 (citing Dkt. 12-9 at 28, R. 762)), on the Court's review of the opinion as a whole[7], the ALJ does not appear, however, to have considered the relevant contradictory Meridian Health Services records during the Step Three or RFC analyses. For example, in the same visit that the ALJ cited to show Siera's normal mental status, Siera reported to her treating Nurse Practitioner that she experienced mania up to three times per week, has occasional mood swings, often feels overwhelmed, and becomes anxious because she feels she does not have enough time to finish tasks. (Dkt. 12-9 at 26, R. 760). NP Jordan noted that Siera had fair insight and judgment, and stated that Siera had presented with symptoms of major depressive disorder with anxiety. (Id. at 28, R. 762). In another session to review her treatment plan, the treating psychiatrist noted that Siera struggles with short term memory, organization, and keeping track of her appointments, and that she has anxiety symptoms of fidgeting, racing thoughts, and lack of focus. (Dkt. 12-9 at 36, R. 770). Without any such analysis of or reference to the Meridian Health Services records, the Court is left without an opportunity for meaningful review.

This was not a matter of the ALJ weighing evidence differently than the Plaintiff would have liked; rather, it does not appear that the ALJ considered the contradictory evidence at all. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (ALJ erred by ignoring line of contradictory of evidence); *Denton,* 596 F.3d at 425 (same);

---

[7] "[I]t is proper to read the ALJ's decision as a whole." *Jenkins v. Saul*, No. 18 C 7031, 2020 WL 7771142, at *13 (N.D. Ill. Dec. 29, 2020) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t would be a needless formality to have the ALJ repeat substantially similar factual analysis at both steps three and five.")).

*Kelly K. v. Kijakazi*, No. 4:20-cv-78-JVB-SLC, 2022 WL 538561, at *2 (N.D. Ind. Feb. 23, 2022) (same). Moreover, this evidence from Meridian Health Services appears to be entirely consistent with and supportive of Plaintiff's claimed symptoms. In failing to the consider all of the relevant evidence and cherry-picking only those facts that would support her ultimate conclusion, it cannot be said that the ALJ's analysis of Siera's ability to concentrate, persist, or maintain pace is supported by substantial evidence.

### b. *Interacting with Others*

To support her finding that Siera had moderate limitations in interacting with others[8], the ALJ noted Plaintiff's allegations from her July 2018 Function Report that she argued with family members and rarely socialized, and had been fired from a job for being rude to customers and other staff members. (Dkt. 12-2 at 23, R. 22). The ALJ also acknowledged the consultative psychologist's opinion that Siera's ability to interact with others was impacted by anxiety and that she would require low-stress social interactions due to anxiety symptoms. (Id.). The ALJ also noted that a nurse practitioner in July 2018 found that Siera had normal insight and judgment on exam, and that Plaintiff was able to maintain a working relationship with the parents of two children whom she babysat. (Id.).

---

[8] The ALJ noted that this area refers to "the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (Dkt. 12-2 at 22-23, R. 21-22).

Plaintiff again argues that the ALJ cherry-picked two points from the record to discount her issues in interacting with others, and ignored the vast majority of evidence that demonstrates greater than moderate difficulties. (Dkt. 15 at 17-20). Specifically, Plaintiff maintains that the ALJ ignored the following evidence:

> [Siera] is noted to struggle with interactions with authority figures. [Dkt. 12-7 at pp.156, 159, R. 434, 437]. She was observed to become agitated and upset, tearful, and exhibit pressured speech. [Dkt. 12-7 at p.160, R. 438; Dkt. 12-8 at pp.29, 37, R. 595, 603]. She demonstrates self-esteem issues and distorted thinking. [Dkt. 12-7 at pp.132, 159, 272, R. 410, 437, 550; Dkt. 12-8 at pp.41, 53, 58, 93, R. 607, 619, 624, 659]. She regularly presented with an anxious mood [Dkt. 12-7 at pp.128, 136, 144, 151, 155, 175, 179, 272, 276, R. 406, 414, 422, 429, 433, 453, 457, 550, 554; Dkt. 12-8 at pp.21, 37, 41, 53, 57, 69, R. 587, 603, 607, 619, 623, 635; Dkt. 12-9 at pp.122, 146, 152, R. 856, 880, 886]. She was noted to have a labile mood. [Dkt. 12-9 at pp.75, 99, 111, 179, 185, R. 809, 833, 845, 913, 919]. She exhibited poor social mannerisms and inappropriate behaviors [Dkt. 12-9 at pp.99, 111, R. 833, 845]. She has poor judgment. [Dkt. 12-9 at p.111, R. 845]. She usually presented with a disheveled appearance [Dkt. 12-7 at pp.128, 132, 136, 144, 151, 155, 159, 167, 171, 179, R. 406, 410, 414, 422, 429, 433, 437, 445, 449, 457; Dkt. 12-8 at pp.37, 49, 70, 77, 93, R. 603, 615, 636, 643, 659; Dkt. 12-9 at pp.163, 169, 174, 185, 196, 200, 205, 210, 215, 220, 225, 230, 235, 240, 244, 249, R. 897, 903, 908, 919, 930, 934, 939, 944, 949, 954, 959, 964, 969, 974, 978, 983]. She usually demonstrates hyper vigilance. [Dkt. 12-7 at pp.128, 159, 163, 272, 276, R. 406, 437, 441, 550, 554; Dkt. 12-8 at pp.13, 21, 37, 41, 45, 49, 53, 57, 61, 65, 69, 77, R. 579, 587, 603, 607, 611, 615, 619, 623, 627, 631, 635, 643; Dkt. 12-9 at pp.169, 240, R. 903, 974].

(Dkt. 15 at 18-19). From even a cursory review of the record, it appears that Siera may have struggled consistently throughout the entire time period at issue with interacting with others. Based on the ALJ's decision to only cite to Plaintiff having normal interactions with parents of children she babysits, and one other reference to

a single visit where she exhibited normal insight and judgment[9], it is not clear whether the ALJ adequately considered the contradictory evidence from Meridian Health Services because she does not mention or reference it beyond a citation to one page.  Furthermore, the ALJ limited Siera to no interaction with the general public and only occasional interaction with supervisors and coworkers, but failed to explain the difference why one category of interaction required further restrictions than another and no medical opinion exists to support that distinction. Again, without any explanation, the Court is prevented from conducting a meaningful review. Accordingly, because the ALJ failed to build an logical bridge from the evidence to her conclusion, this Court must remand for further consideration.

### B. Remaining Arguments

Siera also argues that the ALJ's RFC fails to adequately accommodate for her difficulties with concentrating, persisting, and maintaining pace and interacting with others and that the ALJ conducted a faulty SSR 16-3p analysis of her subjective symptom allegations. (Dkt. 15 at 14-15, 20-32). The Court has already concluded that the ALJ's analysis related to those two "paragraph B" areas was lacking and that it is not clear whether the ALJ reviewed the bulk of the medical evidence from Meridian Health Services, which appears to largely support Siera's subjective complaints. For these reasons, the Court declines to determine whether the RFC adequately

---

[9] The ALJ never explains how Siera's normal mental status at one examination outweighs the multitude of evidence demonstrating significant difficulties with interacting with others. *See Alexis G. v. Saul*, No. 1:20-cv-143, 2021 WL 870813, at *11 (N.D. Ind. Mar. 9, 2021) ("The ALJ did not explain how the observations of being polite, cooperative, and having good eye contact during brief medical appointments undermined the reports and opinions about Plaintiff's difficulties interacting with supervisors and coworkers in the context of a work setting.").

accommodated all of Siera's limitations supported by the record or whether the ALJ's 16-3p analysis was sufficient. Accordingly, because this matter is being remanded for the ALJ to reconsider the medical evidence when evaluating the "paragraph B" criteria, the ALJ should take the opportunity to reconsider whether substantial evidence supported the subjective symptom analysis and RFC assessment.

## V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/14/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.